IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          :
                                   : CRIMINAL ACTION
         v.                        :
                                   : NO. 96-336-2
TEVIN LEWIS                        :

### MEMORANDUM

**Chief Judge Juan R. Sánchez**                                    **June 8, 2022**

Defendant Tevin Lewis has filed a second pro se Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i) as amended by the First Step Act.[1] He again moves for "compassionate" release from his 540-month sentence for his convictions on charges of multiple carjackings, conspiracy to commit carjacking, and firearms offenses. Because Lewis has failed again to show sufficient grounds entitling him to relief under § 3582(c)(1)(A)(i), his motion for early compassionate release is denied.

### FACTUAL BACKGROUND

On January 6 and January 14, 1996, Lewis, Tyrone Briggs, and Dameon Berry committed and/or attempted to commit three violent carjackings in Philadelphia. On January 6, the three men stole the car of victim David Keane. Keane was ordered out of the car and Briggs pulled a gun on

---

[1] Defendant Lewis filed an earlier motion for compassionate release on the grounds that he committed his crime at 19 years old, is fully rehabilitated, earned his G.E.D., completed his drug program, picked up several trades, and lost over 200 pounds. He additionally argued his father died from cancer in 2018, his aging mother needs assistance, and he wishes to be a part of his adult son's life as a free man. This Court denied that motion for multiple reasons, including: (1) Lewis's § 924(c) arguments failed because Congress chose not to apply the new sentencing scheme retroactively; (2) Lewis's three violent carjackings weigh unfavorably with regard to the § 3553(a) factors; (3) Lewis's circumstances failed to rise to the level of extraordinary or compelling circumstances as outlined in the Commentary/Policy Statement to U.S.S.G. § 1B1.13 interpreting § 3582(c)(1)(A). (Mem. Op., 2-6, ECF 265).

him. Briggs shot the gun from point blank range, but it failed to discharge. The three men then drove off in the stolen car. On January 14, the trio attempted two additional carjackings. In the first incident, which occurred in a gas station parking lot, Lewis put a semiautomatic handgun to the shoulder and then the throat of the car's passenger. He showed the gun as the victims sped away, but did not discharge the weapon. In the second incident, which took place in the parking lot of a Budget Rent-A-Center, Lewis pulled out a semiautomatic handgun and fired it at point blank range at the victim, John Wicker's, head narrowly missing him. After this third attempted carjacking, Wicker, a Budget Rent-A-Center security guard, contacted Philadelphia police, who were able to quickly locate the defendants. A high-speed chase ensued, which ended when the defendants crashed the stolen car. They fled on foot but were quickly caught.

On November 15, 1996, following a four-day trial, Lewis, Briggs, and Berry were all convicted of one count of conspiracy to commit carjackings in violation of 18 U.S.C. § 371, one count of carjacking and aiding and abetting in violation of 18 U.S.C. § 2119 and (2), two counts of attempted carjacking and aiding and abetting, also in violation of 18 U.S.C. § 2119 and (2), and three counts of using a firearm in relation to a crime of violence and aiding and abetting in violation of 18 U.S.C. § 924(c)(1) and (2). Lewis was sentenced to 63 months in prison on the carjacking counts, and to consecutive terms totaling 540 months (that is 60 months, 240 months, and 240 months on the three § 924(c) charges).

Currently incarcerated, Lewis is a 46-year-old morbidly obese black man with asthma, who has smoked a pack of cigarettes a day for 20 years. Lewis is vaccinated against COVID-19: he received doses of the Moderna vaccine on August 16, 2021, and September 15, 2021.  Lewis has not sought medical treatment except for annual blood pressure checks that have been consistently

unremarkable, a 2011 tooth extraction, and the Moderna vaccinations themselves. Lewis has not had any asthma symptoms, nor has he sought treatment for his asthma while in prison.

**LEGAL STANDARDS**

In general, federal courts "may not modify a term of imprisonment once it has been imposed." *Dillon v. U.S.*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). However, there are a couple of limited exceptions to this general principle. One exception is listed in the statute itself. Specifically, 18 U.S.C. § 3582(c)(1)(A) reads as follows:

> **(c) Modification of an imposed term of imprisonment.** — The court may not modify a term of imprisonment once it has been imposed except that —
>
> **(1)** in any case —
>
>> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), ***after considering the factors set forth in section 3553(a) to the extent that they are applicable***, if it finds that--
>
>>> **(i)** ***extraordinary and compelling reasons*** warrant such a reduction; or
>
>>> **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

*and* that such a reduction is **consistent with applicable policy statements issued by the Sentencing Commission**; . . . (emphasis added).

The relevant 18 U.S.C. § 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, . . . to provide the defendant with needed [rehabilitative] care, . . . [and] the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (2)(A-D), (6).

Prior to the passage of the First Step Act, an inmate could only obtain compassionate release if the Bureau of Prisons filed a motion for such relief on the defendant's behalf.  Now of course, a defendant may move the court for early release him/herself provided application is first made to the Warden of the defendant's institution and thirty days have elapsed.  The Sentencing Commission, however, has yet to update its Policy Statement relative to reductions in terms of imprisonment under § 3582(c)(1)(A) since the First Step Act's passage. On its face, the Policy Statement set forth at U.S.S.G. § 1B1.13[2] is limited to compassionate release motions initiated by

---

[2] The U.S.S.G § 1B1.13 Policy Statement provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that —

**(1)(A)** Extraordinary and compelling reasons warrant the reduction; or

**(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

the Bureau of Prisons (BOP). While the Policy Statement "sheds light on the meaning of extraordinary and compelling reasons" and continues to provide guidance in deciding § 3582(c)(1)(A) motions, it is not binding on the Court. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Courts can consider the Policy Statement and any other reasons that a defendant raises in determining whether a sentence reduction on the grounds of compassionate release is appropriate. *Id.* District courts have much discretion in weighing the § 3553(a) factors and in determining whether to grant compassionate release motions. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020).

The Commentary to the Policy Statement explains that "extraordinary and compelling reasons exist" if the defendant is suffering from a "terminal illness (i.e., a serious and advanced illness with an end of life trajectory), . . . a serious physical or medical condition, . . . functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process" that substantially diminish the defendant's ability to provide self-care within a correctional facility. U.S.S.G. § 1B1.13 cmt. n.(1)(A). Extraordinary and compelling reasons also may exist where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* cmt. n.(1)(B). Additionally, if the caregiver of the defendant's minor children or the defendant's spouse or registered partner "when the defendant would be the only available caregiver for the spouse or registered partner" becomes incapacitated, then extraordinary and compelling reasons also arise. *Id.* cmt. n.(1)(C). Finally, the

---

**(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

**(3)** The reduction is consistent with this policy statement.

Policy Statement commentary gives the "Director of the BOP the authority to determine if 'there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with' the other categories." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396-97 (E.D. Pa. 2020) (quoting U.S.S.G. § 1B1.13 cmt. n.(1)(D)). On its own, "rehabilitation of the defendant is not. . . an extraordinary and compelling reason" for compassionate release. U.S.S.G. § 1B1.13 cmt. n.3. The burden of proof is on the defendant to prove his case by a preponderance of the evidence. *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 501 (E.D. Pa. 2020).

**DISCUSSION**

In applying these standards, Lewis's motion for compassionate release is denied because he fails to show "extraordinary and compelling reasons" for early release.

Lewis has satisfied the administrative requirement that he fully exhaust all "administrative rights to an appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier." *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020). On January 28, 2022, Lewis filed his motion with the Warden of USP Lewisburg which was subsequently denied on February 3, 2022. After 30 days, he filed his motion with this Court.

Data from the BOP and USP Lewisburg, where Lewis is presently detained, reflect the unlikelihood that their inmates will contract or experience a heightened risk of death due to COVID-19. The BOP has implemented "extensive management changes to reduce the risk of transmission [of COVID], and has offered vaccines promptly to every inmate." (Gov't's Resp. to Def.'s Mem. in Supp. of Mot. for Comp. Rel., 12, ECF 274). The BOP has restricted visits such that they are either non-contact or suspended altogether, restricted inmate movement within the

6

prisons, maximized social distancing, and mandated masking and frequent cleaning of all facilities. www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp. Hence, the rate of deaths from inmates in the BOP is substantially similar to the rate in the general population, such that early release will not place the defendant at any less risk.[3] https://www.bop.gov/coronavirus/; *Id.* In fact, since the Omicron outbreak in January of 2022, there were "no positive cases in the [USP Lewisburg] inmate population of 935. *Id.*

Here, Lewis does not offer any evidence other than the general idea that COVID is hospitalizing and killing prisoners at a "high rate." (Def.'s Mem. in Supp. of Mot. for Comp. Rel. ("Def's Mot."), 21, ECF 272). Lewis relies upon an editorial, opinion article citing a general lack of hand sanitizer and social distancing in correctional facilities. *Id.* at 24-25. However, this general information does nothing to address the direct risk of COVID-19 faced by Lewis at USP Lewisburg. Rather, it is incumbent upon the Court to assess his individualized health and other factors.

While the CDC has listed various medical conditions that put people at a heightened risk of dying from COVID-19, vaccines have proven highly effective at mitigating these risks. The medical conditions that put people at a greater risk of adverse outcomes from contracting COVID-19 are as follows: cancer; chronic kidney, liver, and lung diseases; diabetes; heart conditions like heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension; having an immune-compromised state; and obesity. https://www.cdc.gov/coronavirus/2019-ncov/need-extra

---

[3] 290 inmate deaths in BOP prisons which houses about 157,000 inmates compared to 975,000 deaths among the general population.

-precautions/people-with-medical-conditions.html. However, the CDC qualifies the danger by stating that vaccines are "effective," and "[g]etting vaccinated prevents severe illness, hospitalizations, and death." https://www.cdc.gov/aging/covid19/covid19-olderadults.html.

After conducting extensive clinical trials before permitting these vaccines to be given to the public, the FDA found the approved vaccines to have relatively high effectiveness rates against hospitalizations, which was only "slightly lower for older adults and for people with weakened immune systems." https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness /work.html. Vaccinated older adults can "resume activities they did prior to the pandemic without wearing a mask or staying 6 feet apart." https://www.cdc.gov/aging/covid19/covid19-older-adults.html. Because vaccines have been administered throughout the BOP, compassionate release motions based on COVID-19 alone are increasingly found to lack merit. *See United States v. Reed*, No. 18-cr-78, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.). In fact, the Third Circuit has observed that "widespread availability of the COVID-19 vaccine. . . eliminates" the need for compassionate release. *See Garrett v. Murphy*, 17 F.4th 419, 433 (3d Cir. 2021) (citing *United States v. Burgard*, 857 F. App'x 254, 255 (7th Cir. 2021)).

Here, Lewis claims he is at a "heightened risk for death due to Covid-19 due to [his] current health status and the fact that it is impossible to practice 'social distancing.'" (Def.'s Mot., 19, ECF 272). The record shows Lewis is a 46-year-old black man who alleges he is morbidly obese with a BMI of 41.7, has a history of asthma, and has smoked, on average, about a pack of cigarettes a day for 20 years. (Gov't's Resp. to Def.'s Mot., 6, ECF 274); (Def.'s Mot., 21-27, ECF 272). Lewis points out that Courts have determined that obesity coupled with even mild asthma can constitute extraordinary and compelling reasons for release. *See United States v. Black*, No. 1:11cr-83 TWP-MJD, 2020 WL 4583056, at *1 (S.D. Ind. Aug. 10, 2020). However, such cases were decided well

before COVID-19 vaccines were developed and made available to the public. After the vaccines became available, most of the inmates with similar ailments to Lewis have been denied compassionate release, particularly in this district. *See United States v. Griffin*, No. 07-374-2, 2021 WL 1853540, at *4 (E.D. Pa. May 7, 2021) (DuBois, J.) (holding a defendant's race does not conclusively place him at increased risk of contracting COVID-19); *see also United States v. Lopez-Batista*, No. 16-358, ECF No. 94 (E.D. Pa. Aug. 23, 2021) (Sánchez, C.J.) (finding diabetes and obesity do not warrant compassionate release because "[he] has received a vaccine. . . [and thus] has received significant protection from COVID-19 and any severe illness due to medical conditions and comorbidities."); *see also United States v. Peterson*, No. 02-cr-611, 2021 WL 2156398, at *2 (E.D. Pa. May 27, 2021) (Joyner, J.) (holding a defendant who "suffers from hypertension, asthma, and prediabetes and … is obese and a former smoker," does not present "extraordinary and compelling circumstances at this time," … "[g]iven the significant protection the [Johnson and Johnson] vaccine offers and the declining rates of COVID-19 infections in prisons").  *See also, United States v. Otero-Montalvo*, No. 16-cr-419, 2021 WL 1945764, at *3 (E.D. Pa. May 14, 2021) (Schmehl, J.) (dismissing a complaint from a 41-year-old defendant with asthma and obesity because the BOP is administering vaccinations, is "taking the appropriate precautions to. . . safeguard[] inmates," and the defendant has received his vaccination).

Additionally, there have been no recent reported cases from USP Lewisburg during the Omicron variant spike, further emphasizing the effectiveness of the BOP's precautions. *See* (Gov't's Resp. to Def's Mot., 12, ECF 274).  *See also United States v. Berry*, No. 09-116, 2021 WL 3537145, at *3 (E.D. Pa. Aug. 11, 2021) ("Although he suffers from medical conditions making him more vulnerable to serious illness or death from COVID-19, the risks posed to Berry's health are minimal. His vaccination status provides sufficient protection against the risks. Moreover,

Berry is housed at FCI Schuylkill, which has no reported cases among inmates or staff."). From this, the Court concludes that Lewis' claimed medical conditions do not present the requisite "extraordinary or compelling reasons" to merit granting him relief under 18 U.S.C. § 3582(c)(1)(A).

Lewis also does not meet the criteria for compassionate release under U.S.S.G. § 1B1.13. This Court has acknowledged and commended Lewis's good conduct while incarcerated. His conduct shows he is making progress toward successful rehabilitation: he has availed himself of numerous courses, undertaken self-programming, and has acquired several trade skills and his GED. In addition to this, Lewis again asserts that his father died several years ago, his aging mother could use some help, and that he wants to spend time with his adult son. The Court considered these matters just a few months ago in relation to Lewis's first compassionate release motion. Again, although these efforts do militate somewhat in favor of Lewis's early release, rehabilitation alone does not constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.(3).

Finally, considering the relevant factors under 18 U.S.C. § 3553(a), Lewis still fails to meet the standard for compassionate release. Lewis was convicted of three violent carjackings and attempted carjackings in a one-month time frame. At 19 years of age, Lewis fired a handgun at one victim's head at point-blank range (narrowly missing) and at the shoulder and neck of another victim, but the gun, thankfully, failed to discharge. Lewis and his two co-defendants were only apprehended after a high-speed car chase with police that caused them to crash into a utility pole and to flee on foot. These were highly egregious actions and Lewis's criminal conduct was worthy of the prison sentence he received. That sentence was appropriate to punish Lewis, promote respect for the law, deter such future behavior, and protect the public from Lewis's commission of further

heinous crimes. After consideration of this, Lewis's second such motion, the Court reiterates that he has still not shown compassionate release is necessary or warranted in this case.

**CONCLUSION**

Lewis's argument for compassionate release lacks merit. Neither his physical ailments nor his rehabilitative efforts and family circumstances rise to the level of "extraordinary and compelling" to warrant a grant of compassionate release. The fact that Lewis is vaccinated against COVID-19 further militates in favor of denying this motion. For these reasons, the Court exercises its discretion and denies Lewis's second motion for early, compassionate release.

An Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
_____
Juan R. Sánchez,          C.J.